**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, ET AL., | ) | |
| Plaintiffs, | ) | Case No. 12-cv-9718 |
| v. | ) | Judge Robert M. Dow, Jr. |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Great American Insurance Company of New York and Gulf Coast Marine, LLC, both subrogees and assignees of Plaintiff Egan Marine Corporation, filed this action against Defendant United States of America, seeking judicial review of the decision by the National Pollution Funds Center ("NPFC") to deny their claims under the Oil Pollution Act of 1990, 33 U.S.C. § 2701 *et seq.,* for reimbursement of oil removal costs following a barge explosion on January 19, 2005. Currently before the Court are cross-motions for summary judgment filed by the parties [33 and 38]. For the reasons set forth below, the Court denies Defendant United States' motion for summary judgment [33], grants in part Plaintiffs' cross-motion for summary judgment [38], sets aside the NPFC's determination, and remands this matter to the NPFC for further proceedings.

## I. Background

Plaintiff Egan Marine Corporation ("EMC") at all relevant times owned and operated the tank barge EMC 423 and the motor vessel ("M/V") LISA E. Dennis Egan serves as president and sole shareholder of EMC. On January 19, 2005, the M/V LISA E was towing the EMC 423 as it transported clarified slurry oil on the Chicago Sanitary and Ship Canal. At approximately

4:30 p.m., there was an explosion aboard the EMC 423 that caused a fire on the barge. At the time of the explosion, EMC 423 was carrying 14,272 barrels of clarified slurry oil. As a result of the explosion, Alexander Olivia, an Egan Marine employee who was aboard the barge, died, and 4,718 gallons of oil spilled into the canal.

Cleanup and removal activities were undertaken at the direction of the United States Coast Guard, with Service Welding and Shipbuilding, LLC ("SWS"), a limited liability company owned by Mr. Egan, serving as the primary removal contractor. As insurers of EMC, Plaintiffs Great American Insurance Company ("GAIC") and Gulf Coast Marine, LLC (as agent for Northern Assurance Company of America and Markel America Insurance Company) ("Gulf Coast") paid more than $8.6 million in costs associated with the removal effort. The United States of America, directly and as subrogee to claimants of the Oil Pollution Act's Oil Spill Liability Trust Fund ("the Fund"), also incurred removal costs as a result of this incident. As discussed in more detail below, EMC, SWS and Plaintiffs sought to recover their removal costs from the Fund through administrative claims to the National Pollution Funds Center ("NPFC") initiated in January 2008, while the United States attempted to recover its removal costs from EMC in an affirmative lawsuit filed in June 2008 in this district.

**A. Plaintiffs' Initial Claim for Reimbursement to the NPFC (2008)**

On January 11, 2008, Plaintiffs submitted claims to the NPFC seeking reimbursement of removal costs incurred on behalf of EMC and SWS. In support of these claims, Plaintiffs argued that EMC was entitled to full exoneration from liability and recovery of all clean-up and removal costs under 33 U.S.C. § 2703 because the incident was solely caused by acts or omissions of third parties. Alternatively, they argued that EMC was entitled to a limitation of its liability in the amount of $2,000,000, and the recovery of removal costs over this amount, under 33 U.S.C. § 2704(a)(1)(B). (*Id.* ¶¶ 35, 36, 38). This limitation of liability applies unless an incident was

proximately caused by the gross negligence or willful misconduct of, or a violation of an applicable federal safety, construction or operating regulation by, the responsible party or its agent. 33 U.S.C. § 2704(a)(1). Plaintiffs also maintained that SWS's expenses should be reimbursed because the company was not a "responsible party" under the Act. ( *Id.* ¶ 42).

The NPFC denied the claims on February 20, 2008, finding (in part) that EMC was guilty of gross negligence because one of its employees had caused the explosion by using a propane torch near an open standpipe. This decision, however, was based on a non-final draft of the Coast Guard's Report of Investigation, prepared by Lt. Mark Hamilton. When the NPFC discovered that it had considered a draft report, it rescinded the decision and "ordered a *de novo* adjudication."

**B. The United States' Attempt to Recover Removal Costs (2008–2011)**

On June 2, 2008, the United States filed suit against EMC in the Northern District of Illinois seeking to recover removal costs that it incurred as a result of the oil spill. Specifically, the United States argued that EMC was not entitled to limited liability and was instead fully liable for all costs because the explosion resulted from the company's negligence, gross negligence, and/or violations of applicable federal safety regulations—specifically, an EMC employee's alleged use of a propane torch near an open standpipe. While this case was pending, the NPFC held Plaintiffs' administrative claims in abeyance, "contending that the decision on the issue of limitation of liability was central to the litigation, and would be decided by the court."

After a bench trial, Judge Harry Leinenweber issued a decision on October 13, 2011, finding that the United States had failed to prove that EMC was guilty of gross negligence, willful misconduct, or a violation of any regulation that caused or contributed to the explosion on the EMC 423 and the resulting oil spill. Judge Leinenweber explained that "[b]ecause the Government has proved neither that a propane torch was being used nor the standpipe was open

this Court cannot accept the Government's theory of the cause of the explosion." *United States v. Egan Marine Corp.*, 2011 WL 8144393, at *3 (N.D. Ill. Oct. 13, 2011). As a result, "the limitation of liability *does* apply in this case, and the Government is not entitled to recover additional funds from EMC." *Id.* at *4 (emphasis in original).

**C. Plaintiffs' Second Claim for Reimbursement to the NPFC (2012)**

On June 11, 2012 (about eight months after Judge Leinenweber's ruling), the NPFC denied Plaintiffs' claims for reimbursement of removal costs incurred on behalf of EMC and SWS. The NPFC stated that Plaintiffs and their insureds failed to meet their burden of proving by a preponderance of the evidence the actual cause of the explosion, including the source of ignition. As a result, the NPFC said it could not "determine that the claimant has demonstrated entitlement to a limit of liability where exceptions may apply that are dependent on the circumstances of the incident that bear on proximate causation." With respect to SWS, the NPFC found that given Mr. Egan's ownership of both EMC and SWS, SWS "ha[d] not established its third party claimant status because there [wa]s evidence that Service Welding may have been an owner or operator at the time of the incident and therefore a responsible party."

Attached to the NPFC's denial was an "Appendix A" of "Documentation and Evidence Reviewed and Considered" in reaching the decision. This appendix included a list of unrelated violations committed by several EMC barges from 1994 through 2004, only one of which pertained to the EMC 423. The appendix also cited to testimony from Lieutenant Commander Dean Firing of the Coast Guard that EMC did not have a "positive" reputation. Finally, Appendix A summarized testimony from nearly every deponent in the lawsuit filed by the United States (No. 08 C 3160), but omitted any reference to eyewitness Bobby Griffin, who saw the explosion from the Cicero Avenue Bridge. The appendix cursorily acknowledged the presence

of a second eyewitness, William Arrington, but said nothing about his testimony that prior to the explosion, he did not see anyone on the barge, or anyone using a propane torch.

Plaintiffs submitted a timely Request for Reconsideration, and on September 21, 2012, the NPFC issued a new decision agreeing with Plaintiffs' objections to the use of Appendix A. Specifically, the NPFC stated:

> [T]o the extent the appendix includes conjecture as to what violations may have occurred if the cause of the explosion had been established, it is irrelevant to the determination. In hindsight, it is an unnecessary appendix and to the extent it has created confusion, it was ill-advised. As Claimants rightly state, the appendix failed to include a list of all evidence available for review, including the deposition testimony of an eyewitness. In reconsidering the first determination, the NPFC reviewed again all evidence in the record.

Nevertheless, after "perform[ing] a *de novo* review of the complete claim submission and the entire record," the NPFC affirmed that Plaintiffs were not entitled to limited liability under the OPA because "the cause of the explosion remains unknown" and "it is fundamental that the cause of an incident must be explained in order to demonstrate entitlement to a limitation of liability." The NPFC rejected the argument that collateral estoppel required a finding of limited liability based on Judge Leinenweber's ruling given the "differing evidentiary standards, burden of proof, identity of the parties and nature of the relief sought * * *." The agency instead concluded that the district court had not decided whether Plaintiffs had "demonstrated an entitlement to a limitation of liability"—only that "the Government had failed to prove its theory of the cause of the incident by a preponderance of the evidence, and therefore could not recover costs from [EMC]."

With respect to SWS, the NPFC reversed its earlier decision denying the claim and granted the company's request for reimbursement. The NPFC explained that "new documentation provided by the Claimant establishes that Service Welding, as an entity distinct

from Egan Marine, was not an owner or operator of the barge * * * at the time of the incident and is not a responsible party."

**D. The Present Lawsuit**

Plaintiffs filed this lawsuit on December 6, 2012, seeking judicial review of the NPFC's decision pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.* They also filed a motion to compel arguing that they were entitled to discovery of several categories of documents because: (1) the administrative record in this case is incomplete; and/or (2) the United States has acted in bad faith in adjudicating their claims.[1] Plaintiffs also requested that the United States produce a privilege log listing any documents that it withheld from the administrative record on privilege grounds. The magistrate judge concluded that Plaintiffs did not demonstrate that the administrative record in this case was incomplete or that they were entitled to the requested discovery because the NPFC handled their claims in bad faith. Following the magistrate judge's ruling, both sides cross-moved for summary judgment.

## II. Standard of Review

Summary judgment standards are applicable when cross-motions are filed in APA cases. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 883-85 (1990). However, in such a case, the district court "sits as an appellate tribunal," and "the question of whether [the agency] acted in an arbitrary and capricious manner is a legal one which the district court can resolve on the agency record." *Univ. Med. Ctr. of S. Nev. v. Shalala*, 173 F.3d 438, 440 n. 3 (D.C. Cir. 1999).

---

[1] The requested documents included: (1) internal communications among NPFC personnel; (2) communications between the NPFC and other agencies, including divisions of the Coast Guard; (3) memoranda, notes, or summaries contained within the agency file in this matter; (4) drafts of the Coast Guard Investigation Reports and decisions issued in this matter, including comments on such drafts; (5) documents concerning meetings held by the NPFC or other agencies relating to this matter; (6) internal guidelines or policies for adjudicating claims; and (7) any other documents or materials relied upon by the NPFC in any way to reach its decision.

The APA provides the standard of review that the Court must apply when reviewing an agency's actions. 5 U.S.C. § 706. The APA provides that the Court may hold unlawful and set aside agency action found to be arbitrary, capricious, or otherwise not in accordance with law. *Id.* at § 706(2)(A). When applying this standard, the Court looks to whether the "agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Supreme Court recently explained that under this "'narrow' standard of review, we insist that an agency examine the relevant data and articulate a satisfactory explanation for its action." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009) (internal quotation marks omitted)(citing *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). This standard of review is highly deferential, and courts should not substitute their own judgment for the agency's. See *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971); *Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 465 (7th Cir. 2012). Rather, reversal is appropriate only where the administrative action is irrational or represents a clear error in judgment. *Indiana Forest Alliance, Inc. v. U.S. Forest Service*, 325 F.3d 851, 858-59 (7th Cir. 2003).

To the extent that the NPFC's conclusion that Plaintiffs failed to prove an entitlement to a limitation of liability includes a statutory interpretation of OPA, the NPFC's interpretation deserves deference under either *Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1984), or *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), as appropriate. See, *e.g.*, *Buffalo Marine Services, Inc. v. United States*, 663 F.3d 750, 757 (5th Cir. 2011) (holding that the NPFC'sinterpretation of OPA's third-party defense provision is entitled to Chevron deference).

However, even where a court may give deference to an agency interpretation, "courts have the reserve of power to substitute their own judgment on all questions of statutory interpretation. The preliminary power of interpretation is in the agency, but the final power of interpretation is in the courts." 2 K. Davis, *Administrative Law Treatise* § 7:11, at 55 (1979); see also *Atchison, T. & S. F. Ry. Co. v. U.S.*, 617 F.2d 485, 496 (7th Cir. 1980) ("A court does not defer to an administrative construction of a statute when there are 'compelling indications that it is wrong.'") (quoting *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 94-95 (1973)). Having said that, the interpretation of a statutory term by an agency charged with administering the statute "do[es] constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore*, 323 U.S. at 140.

## III. Analysis

### A. Background on the Oil Pollution Act of 1990

Congress passed the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.*, in response to the Exxon Valdez oil spill in Prince William Sound, Alaska. *Water Quality Ins. Syndicate v. United States*, 522 F.Supp.2d 220, 226 (D.D.C. 2007). The statute, which lays out a framework for assessing liability for costs and damages associated with oil spills, was intended "to streamline federal law so as to provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills within the petroleum industry." *Rice v. Harken Exploration Co.*, 250 F.3d 264, 266 (5th Cir. 2001). In general, OPA establishes (1) a strict liability scheme for oil spill removal costs and related damages, and (2) an administrative adjudication process by which the United States pays eligible claims for those costs under prescribed conditions. 33 U.S.C. § 2701 *et seq.* More specifically, OPA reformed the then-existing framework to (1) impose strict, joint and several liability for cleanup costs and certain categories of damages upon the parties responsible under OPA for the source of the spill; (2)

raise the liability limit for vessels; (3) abrogate the liability limit where specified conduct was the proximate cause of the spill; and, (4) limit defenses to those specifically identified within the statute. See generally 33 U.S.C. §§ 2701-2720; see also *Apex Oil Co. v. United States*, 208 F. Supp. 2d 642, 651-53 (E.D. La. 2002).

OPA provides, in relevant part, that "each responsible party for a vessel or a facility from which oil is discharged * * * into or upon the navigable waters or adjoining shorelines * * * is liable for the removal costs and damages * * * that result from such an incident." 33 U.S.C. § 2702(a). This includes all removal costs incurred by the United States government and certain removal costs incurred by third parties. *Id.* § 2702(b). In certain circumstances, however, a responsible party may seek to limit its financial liability and secure reimbursement for costs incurred. *Id.* §§ 2704, 2708. To do so, the responsible party must submit a claim directly to the Oil Spill Liability Trust Fund. *Id.* § 2713(b)(1)(B).

The United States Coast Guard (operating under the Department of Homeland Security) is charged with implementing OPA, including adjudicating claims seeking compensation from the Fund. 33 U.S.C. §§ 2712-16. The Coast Guard has enacted regulations governing the procedures for presenting, filing, processing, settling, and adjudicating such claims. See 33 C.F.R. § 136.1 *et seq.* Within the Coast Guard, the claims adjudication process has been principally delegated to the National Pollution Funds Center ("NPFC"). The NPFC itself is financed in part by taxes on oil[2] and is available to pay claims for uncompensated removal costs

---

[2] The Oil Spill Liability Trust Fund consists of "such amounts as may be appropriated or credited to such Trust Fund as provided in this section or section 9602(b)." 26 U.S.C. § 9509; 33 U.S.C. § 2701(11) ("'Fund' means the Oil Spill Liability Trust Fund, established by section 9509 of Title 26"); see also 26 U.S.C. § 9602(b) (dealing with the management of the Fund, and in particular investing portions of the Fund). Pursuant to 26 U.S.C. § 9509(b), amounts are appropriated to the Fund as follows:

> (1) taxes received in the Treasury under section 4611 (relating to environmental tax on petroleum) to the extent attributable to the Oil Spill Liability Trust Fund financing rate under section 4611(c),

determined by the NPFC to be consistent with the National Contingency Plan. 33 U.S.C. § 2712(a)(4); 33 C.F.R. § 136.205.

**B. The Crux of the Dispute**

As previously indicated, § 2702(a) of OPA imposes strict liability for pollution removal costs on the responsible party, but explicitly makes that liability subject to the remaining provisions of the Act. Among other things, the remaining provisions provide for an absolute defense to liability, under limited circumstances, and a limitation of liability in others. See 33 U.S.C. §§ 2702, 2703, 2704, and 2708. At the crux of this dispute is whether the NPFC correctly interpreted OPA to require Plaintiffs to prove by a preponderance of the evidence the proximate cause of the explosion on EMC 423 in order to demonstrate a limitation of liability and recover from the Fund.

As noted, Plaintiffs are entitled to make a claim to the Fund only if they demonstrate either one of OPA's complete defenses to liability (not relevant in this action) or an entitlement to OPA's limitation of liability. 33 U.S.C. § 2708(a). A responsible party is not entitled to limit

---

(2) amounts recovered under the Oil Pollution Act of 1990 for damages to natural resources which are required to be deposited in the Fund under section 1006(f) of such Act,
(3) amounts recovered by such Trust Fund under section 1015 of such Act,
(4) amounts required to be transferred by such Act from the revolving fund established under section 311(k) of the Federal Water Pollution Control Act,
(5) amounts required to be transferred by the Oil Pollution Act of 1990 from the Deepwater Port Liability Fund established under section 18(f) of the Deepwater Port Act of 1974,
(6) amounts required to be transferred by the Oil Pollution Act of 1990 from the Offshore Oil Pollution Compensation Fund established under section 302 of the Outer Continental Shelf Lands Act Amendments of 1978,
(7) amounts required to be transferred by the Oil Pollution Act of 1990 from the Trans-Alaska Pipeline Liability Fund established under section 204 of the Trans-Alaska Pipeline Authorization Act, and
(8) any penalty paid pursuant to section 311 of the Federal Water Pollution Control Act, section 309(c) of such Act (as a result of violations of such section 311), the Deepwater Port Act of 1974, or section 207 of the Trans-Alaska Pipeline Authorization Act.

its liability if the incident was proximately caused by (1) gross negligence or willful misconduct, or (2) the violation of an applicable Federal safety, construction, or operating regulation. 33 U.S.C. § 2704(c)(1). Here, the NPFC did not conclude that any of the exceptions to limitation of liability applied to Plaintiffs—that is, the NPFC did not conclude that Plaintiffs were grossly negligent, engaged in willful misconduct, or violated an applicable Federal regulation. Rather, NPFC denied Plaintiffs' claim because it concluded that Plaintiffs had the burden of proving the actual cause of the explosion, including the source of ignition, by a preponderance of the evidence, and further concluded that the cause of the explosion was undetermined.

Analysis of the key statutory provisions is essential in this dispute. First, § 2708(a) grants to a responsible party the right to assert a claim to the NPFC for recovery of removal costs and damages if it "demonstrates" that it is entitled to a complete defense under § 2703 or a limitation of liability under § 2704. Specifically, § 2708(a) states:

> (a) In general. The responsible party for a vessel or facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, may assert a claim for removal costs and damages under section 2713 only if the responsible party demonstrates that—
>
> (1) the responsible party is entitled to a defense to liability under section 2703 of this title; or
> (2) the responsible party is entitled to a limitation of liability under section 2704 of this title.

33 U.S.C. § 2708(a). Section 2708(a) does not specify how a responsible party is to "demonstrate" that it is entitled to a complete defense under § 2703 or a limitation of liability under § 2704.

Turning to the complete-defense provision, § 2703(a) states:

> (a) Complete defenses. A responsible party is not liable for removal costs or damages under section 2702 of this title if the responsible party establishes, by a preponderance of the evidence, that the discharge or substantial threat of a discharge of oil and the resulting damages or removal costs were caused solely by—

(1) an act of God;
(2) an act of war;
(3) an act or omission of a third party * * * if the responsible party establishes, by a preponderance of the evidence, that the responsible party [exercised due care with respect to the spilled oil and that it took precautions against the foreseeable acts or omissions of the third party to whom it is attempting to shift liability].

33 U.S.C. § 2703(a); see also *Buffalo Marine Services, Inc. v. U.S.*, 663. F.3d 750, 752 (5th Cir. 2011). Thus, § 2703(a) allows a responsible party to assert that it is not liable for any removal costs, but explicitly places on the responsible party the burden of proving the defense by a preponderance of the evidence. See *Buffalo Marine Services*, 663 F.3d at 752.

Section 2704 also shifts the responsibility for removal costs. In relevant part, § 2704 states:

(a) General rule. Except as otherwise provided in this section, the total of the liability of a responsible party under section 2702 of this title and any removal costs incurred by, or on behalf of, the responsible party, with respect to each incident shall not exceed [calculable amounts based on the type and tonnage of the vessel involved.]

* * *

(c) Exceptions.

(1) Acts of responsible party. Subsection (a) of this section does not apply if the incident was proximately caused by—

(A) gross negligence or willful misconduct of, or
(B) the violation of an applicable Federal safety, construction, or operating regulation by,

the responsible party, an agent or employee of the responsible party, or a person acting pursuant to a contractual relationship with the responsible party * * *.

33 U.S.C. § 2704. As evidenced by the plain language of the statutes, § 2704(a), unlike § 2703(a), does not impose a burden on a responsible party to establish its right to the limitation of liability by a preponderance of the evidence. Rather, § 2704(a) states that the "general rule" is

that the total liability "shall not exceed" an amount based on the type and tonnage of the vessel involved, unless an exception applies.

It is a basic rule of statutory construction that where a word or phrase is used in one provision, but absent from another, the absence of language typically is intentional. See *Russello v. United States*, 464 U.S. 16, 23 (1983) (citations omitted). As the Supreme Court has noted, "[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id*. (citations omitted). Comparing the language in §§ 2703 and 2704 raises the following question: If Congress had intended for a responsible party to establish, by a preponderance of the evidence, that it was entitled to limit its liability, and to disprove the applicability of the exceptions to limitation, wouldn't it have done so by expressly including that language, as it did in § 2703? However, "Congress did not write the statute that way" (*Russello*, 464 U.S. at 23), suggesting that it views a responsible party's burdens with respect to complete defenses and limitations of liability differently.

Further, while § 2708(a) states that a responsible party must "demonstrate" its entitlement to a limitation of liability, neither § 2708(a) nor § 2704 states that the party has the burden of proving it by a preponderance of the evidence. How, then, does a responsible party "demonstrate" its right to a limitation of liability? The plain language of § 2704(a) and the corresponding regulations are instructive. First, the responsible party must demonstrate that it is the owner of the type of vessel or facility for which a limitation is allowed under § 2704(a) and, in the case of a vessel, establish the gross tonnage of the vessel. Next, it must demonstrate that it has incurred removal costs in excess of the limitation amounts established for the appropriate type of vessel or facility. OPA's regulations suggest that this is no easy feat. See, *e.g.*, 33 C.F.R. §§ 136.1—136.136.313. First, under general requirements for a claim, the regulations place the

burden on the claimant to provide "all evidence, information, and documentation deemed necessary by the Director, NPFC, to support the claim." 33 C.F.R. § 136.105(a). Thus, it is clear that the burden is on the responsible party to present the evidence necessary for the NPFC to fully understand the situation, circumstances, and events leading up to and through the incident and release in order to make a reasonable determination as to the cause(s) and contributing factors of the incident and release.[3] The regulations provide further insight by identifying the "proof" needed to obtain "removal costs" as follows: "(a) That the actions taken were necessary to prevent, minimize, or mitigate the effects of the incident; (b) That the removal costs were incurred as a result of these actions;" and (c) that the actions taken were consistent with the National Contingency Plan or directed by its representative. Notably, the regulations do not refer to the proof required to avoid application of one of the listed exceptions. Additionally, a review of all of the regulations as a whole suggests that the drafters were concerned primarily with ensuring that claimants provide documentation of the removal costs incurred or damages sustained in order to adjudicate whether the particular removal costs and damages alleged are compensable under OPA. See, *e.g.*, 33 U.S.C. §§ 2702(b), 2712(a)(4); 33 C.F.R. Part 136 *et seq.* What is not clear is whether the responsible party also must prove the proximate cause of the

---

[3] At a minimum, Plaintiffs provided the NPFC with all of the evidence submitted during a two week Coast Guard hearing into the incident; the testimony of the witnesses from the trial before Judge Leinenweber; and testimony developed during discovery in the civil action. The NPFC also had the reports and deposition testimony of all of the United States' and ExxonMobil's expert witnesses in the civil litigation. The United States, including the Coast Guard and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), also began investigating the cause of the explosion on the day of the explosion. The Coast Guard appointed Lt. Mark Hamilton (ret.) to conduct a formal board of investigation into the cause of the explosion, which included a formal hearing with testimony from numerous witnesses. Prior to the hearing, the Coast Guard collected the physical evidence from the sunken barge (including the standpipe and cargo pump), secured all of the evidence in its custody, and took statements from the crew. Lt. Hamilton visited the scene of the explosion fifty to seventy-five times to collect and study the evidence. The Coast Guard and ATF also conducted forensic analysis of the evidence, and the United States retained experts to analyze the evidence and develop theories of the explosion.

incident, or if it satisfies its burden by providing all of the evidence that it marshalled in support of its request. In short, with respect to causation, is the burden one of production or proof?

The Court has not found any court of appeals decisions that discuss the burden of proof for limitation of liability. Two district court decisions that have interpreted § 2708(a) and § 2704(c) reach the conclusion urged by the United States. See *Bean Dredging, LLC v. U.S.*, 773 F. Supp. 2d 63 (D.D.C. 2011); *Water Quality Ins. Syndicate v. U.S.*, 632 F. Supp. 2d 108 (D. Mass. 2009). However, neither decision discusses or reconciles the difference between § 2703, which explicitly imposes the burden of proof on the party seeking a complete defense, and §§ 2704 and 2708, which do not discuss burden of proof.[4] Moreover, neither case goes so far as to state that the claimant must prove the cause of the incident; rather, the focus in both cases was on the acts that were alleged to have been grossly negligent or in violation of a statute or regulation. Here, the NPFC admitted that it could not find Plaintiffs grossly negligent or in violation of federal regulations. In essence then, the NPFC prevented Plaintiffs from recovering under the "general rule" without even finding that an exception applied.

Furthermore, the results reached in *Bean Dredging* and *Water Quality*—that the responsibility party bears the burden of proving an exception to the general rule—run counter to traditional legal principles. Ordinarily, in civil cases, "[a] plaintiff has the burden of proof, except with regard to affirmative defenses * * * * It is sensible to place the burden of proof of an affirmative defense on the defendant, rather than making the plaintiff prove a negative." *James River Ins. Co. v. Kemper Cas. Ins. Co.*, 585 F.3d 382, 385 (7th Cir. 2009). Further, in insurance cases, the insured has the burden of proving coverage under a policy, while the insurer has the burden of proving the applicability of an exclusion to coverage. See *Santa's Best Craft, LLC v.*

[4] The court in *Bean Dredging* noted that it "is mindful that a formulation essentially asking a party to disprove proximate causation is somewhat anomalous." 773 F. Supp. at 86 n. 9.

*St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010) ("Insurers have the burden of proving that an exclusion applies."). And in the context of the Federal Tort Claims Act, the government has the burden of proving the applicability of the discretionary function exception to the waiver of immunity. See *Prescott v. United States*, 973 F.2d 696, 701-02 (9th Cir. 1992) (citing *Stewart v. United States*, 199 F.2d 517, 520 (7th Cir. 1952) (to "impose upon the plaintiff the burden of proving [thirteen] negative averments [would] border on the preposterous")). Common sense also suggests that an interpretation which essentially asks the responsible party to disprove the exceptions—that is, to prove the multitude of ways in which they were not grossly negligent or did not violate federal standards—would not have been the intention of Congress, particularly when Congress explicitly provided for a limitation of liability as the "general rule." The more rational interpretation is that Congress intended the responsible party to gather and provide all of the evidence to the NPFC, so that it could independently form a conclusion as to what happened. If, in reviewing the evidence, it concludes that the responsible party was grossly negligent or violated federal standards, then an exception to the general rule applies. But if it cannot conclude that either exception applies, the general rule applies, regardless of whether the proximate cause of the incident is conclusively established.

The United States also argues that the NPFC's interpretation of OPA aligns with Congress's intent to internalize the cost of oil spills within the petroleum industry and that to read OPA as allowing limited liability would nullify the strict liability framework of OPA. However, OPA already internalizes the cost of oil spills by financing the Fund through a tax on the oil industry. See *infra* n.2 (citing 33 U.S.C. § 2701(11); 26 U.S.C. § 9509). Congress also appears to have recognized that there will be costs that are not paid by the responsible party because of the responsible party's limits of liability. See S. Rep. No. 101- 94, p. 5 (1989) ("The Fund assures that the costs associated with a spill are compensated, not just those within the

spiller's limit of liability, through a mechanism which spreads excess costs to all users of oil."). A finding that requires a claimant to disprove all possible theories of gross negligence in order to obtain the benefit of the "general rule" of limitation does not appear to advance Congress's intent. *Cf. Plantation Pipeline Co. v. The Oil Spill Liability Trust Fund,* 1998 U.S. LEXIS 23671, *24 (D. Ga. June 16, 1998) (holding that the NPFC's decision on the issue of due care was arbitrary and capricious and stating "(t)o require Plantation to prove a negative, that is, to require it to show why its compliance with industry standards did not detect the leak, is to require too much.").

The NPFC denied Plaintiffs' claim solely because it concluded that Plaintiffs have the burden of proving the cause of the pollution incident, and more particularly, the precise cause of the explosion, by a preponderance of the evidence. The NPFC asserted that "(t)he claimant has not established at the very least the cause of the explosion and fire. We, therefore, cannot determine that the claimant has demonstrated entitlement to a limit of liability, where exceptions may apply that are dependent on the circumstance of the incident that bear on proximate causation." More importantly, the NPFC's Claim Summary/Determination Form did not find that EMC was guilty of gross negligence, willful misconduct, or the violation of a federal safety statute that caused the explosion and oil spill, nor does it contend that any of the exceptions to limitation of liability apply. Rather, the NPFC stated: "This determination does not make findings as to all of the circumstances of the incident, in particular the cause of the explosion and fire. In our view of the record, the cause remains unclear * * *."[5] Thus, the NPFC did not

[5] That was not always the government's position. The NPFC's February 20, 2008 denial of Plaintiffs' claims was based on the NPFC's claim that the explosion was caused by the use of a torch, and EMC was guilty of gross negligence. The NPFC later withdrew the denial. The NPFC then waited for the outcome of the trial of the civil action against EMC, where the primary allegation against EMC again related to the alleged use of a torch. After the United States lost the civil trial, the NPFC shifted the basis for denying Plaintiffs' claims from asserting that EMC was guilty of gross negligence, to basing its denial on its

identify the exceptions that applied. Rather, it speculated that there may be exceptions that apply—exceptions that have not been identified.

In essence, the NPFC denied Plaintiffs' claims because Plaintiffs did not prove what the NPFC essentially admitted cannot be proved. However, Judge Leinenweber concluded that the only gross-negligence theory ever advanced by the United States—that Alexander Oliva used a torch to ignite vapors from an open standpipe—was not provable by a preponderance of the evidence. Thus, in reaching its conclusion, the NPFC found that even though the only allegations of gross negligence made by the United States could not be proven, Plaintiffs must do more, and in fact must disprove every other conceivable act that could potentially qualify as gross negligence or willful misconduct and that might "bear" on proximate cause. There is nothing in the language of OPA—or, indeed, in any analogous situation brought to the Court's attention—that places such a burden on a responsible party (or its subrogees) in order to obtain the benefit of the limitation of liability granted by OPA. If the NPFC's position is correct, and the claimant must prove the proximate cause of the explosion, then the claimant will never be able to prove its claim in any case where the cause is undetermined—even if there is no evidence of gross negligence or willful misconduct. This does not appear to be the intent of OPA.

An agency cannot base its decision on speculation. See *Horsehead Resource Dev. Co. v. Browner*, 16 F.3d 1246, 1269 (D.C. Cir. 1994) ("Such speculation is an inadequate replacement for the agency's duty to undertake an examination of the relevant data and reasoned analysis * * *."). Here, it bears repeating again that the NPFC did not find that any of the exceptions to limitation that are contained in § 2704(c)(1) apply to Plaintiffs' claims; rather, the NPFC speculated that EMC might have been grossly negligent or in violation of federal standards.

---

assertion that Plaintiffs have the burden of proving that none of the exceptions to limitation apply and could not carry that burden.

Thus, even giving due deference to the agency's interpretation of OPA and its consideration of the evidence, the Court concludes that the NPFC's denial of Plaintiffs' claim was not in accordance with the provisions of OPA and was arbitrary and capricious. The Court sets aside the NPFC's determination and remands this matter to the NPFC for further proceedings, including adjudication of whether the particular removal costs and damages alleged by Plaintiffs are compensable under OPA.

## IV. Conclusion

For these reasons, the Court denies Defendant United States' motion for summary judgment [33], grants in part Plaintiffs' cross-motion for summary judgment [38], sets aside the NPFC's determination, and remands this matter to the NPFC for further proceedings consistent with this opinion.

Dated: July 9, 2013

______________________________
Robert M. Dow, Jr.
United States District Judge